IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| I'KENYO SHINE, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| VS. | : | NO. 5:09-CV-257 (HL) |
| | : | |
| RANDY TILLMAN, | : | |
| | : | Proceedings Under 28 U.S.C. § 2254 |
| Respondent. | : | Before the U.S. Magistrate Judge |
| _____ | : | |

## RECOMMENDATION

Before the Court is Petitioner I'Kenyo Shine's 28 U.S.C. § 2254 petition seeking habeas corpus relief. Doc. 1. The petition contains two grounds, each alleging ineffective assistance of trial counsel for failure to pursue and obtain rulings on motions to suppress certain evidence. Docs. 1, 29. Because the state habeas court's determination that Petitioner's trial counsel was not deficient in her performance did not result in a decision contrary to clearly established federal law and did not result in a decision based on an unreasonable determination of the facts in light of the evidence presented, **IT IS RECOMMENDED** that the instant petition be **DENIED**.

PROCEDURAL HISTORY

On May 10, 2005, Petitioner was indicted by the Bibb County grand jury for malice murder, felony murder, armed robbery, three counts of aggravated assault, and three counts of possession of a firearm during the commission of a crime. Resp. Ex. 13 p. 119, Indictment (Doc. 24-2). On March 6, 2006, pursuant to a plea bargain, a judgment of *nolle prosequi* was entered on the malice murder, armed robbery, aggravated assault, and possession of a firearm counts in exchange for Petitioner's guilty plea to the felony murder count. Resp. Ex. 13 p. 56, Plea Transcript (Doc. 24-3). Petitioner's guilty plea was offered as a plea in his best interest pursuant

to North Carolina v. Alford, 400 U.S. 25 (3003). Petitioner received a life sentence with the eligibility of parole.

On March 5, 2007, Petitioner filed a state habeas corpus petition in the Superior Court of Washington County.  The petition was subsequently transferred to Ware County. Resp. Ex. 1 (Doc. 9-1). Following an evidentiary hearing at which Petitioner's counsel testified, the state habeas court denied relief. Resp. Ex. 9 (Doc. 9-9). Petitioner then filed an application for a certificate of probable cause to appeal. Resp. Ex. 10 (Doc. 9-10). On October 19, 2009, the Georgia Supreme Court denied Petitioner's certificate of probable cause to appeal. Resp. Ex. 12 (Doc. 24-1).

While Petitioner's certificate of probable cause to appeal was pending, Petitioner filed his federal habeas corpus petition on July, 22, 2009. Doc. 1. Petitioner accompanied his federal petition with a motion to stay the federal petition until the resolution of his state habeas corpus case. Doc. 3. On January 27, 2010, the Court granted the motion to stay *nunc pro tunc* to July 25, 2009, and simultaneously lifted the stay in view of the Georgia Supreme Court's order denying Petitioner's certificate of probable cause to appeal. Doc. 13.

## LEGAL STANDARDS

In accordance with the provisions of  28 U.S.C. § 2254(d), this court is prohibited from granting relief with respect to any claim adjudicated on the merits in state court proceedings unless that adjudication either: (1) resulted in a decision contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court or (2) resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Williams v. Taylor, 529 U.S. 362, 402-13 (2000).

A state court decision is "contrary to" clearly established federal law if either "(1) the state court applied a rule that contradicts the governing law set forth by Supreme Court case law, or (2) when faced with materially indistinguishable facts, the state court arrived at a result different from that reached in a Supreme Court case." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir.2001). An "unreasonable application" of clearly established federal law may occur if the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case." Id. "An unreasonable application may also occur if a state court unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Id. Moreover, when a "state court's application of federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable." Yarborough v. Gentry, 540 U.S. 1, 5 (2003).

DISCUSSION

In Grounds 2 and 4 of his petition,[1] Petitioner claims that his trial counsel was ineffective for failing to pursue and obtain rulings on motions to suppress his alleged confession to the fatal shooting of Jerome Hill. Specifically, Ground 2 contends that Petitioner's right to effective assistance of counsel was violated when his counsel failed to suppress evidence obtained through an illegal detention in violation of the Fourth, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution. Ground 4 contends that Petitioner's right to effective counsel was violated when counsel failed to suppress evidence obtained through investigation that exceeded the scope of a Terry stop, in violation of the Fourth, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution. Because the state habeas court did not err in finding that the performance of Petitioner's trail counsel was not deficient, Petitioner is not entitled to relief.

---

[1] Petitioner's initial federal petition raised seven grounds, including two claims of ineffective assistance of trial counsel. Doc. 1. Plaintiff has since waived all grounds except Grounds 2 and 4, which are the ineffective assistance of trial counsel claims. Docs. 23, 29.

The state habeas court considered Petitioner's ineffective assistance claims on their merits and conducted an evidentiary hearing. Petitioner's trial counsel appeared at the hearing and testified at length about her performance and communications with Petitioner leading up to Petitioner's guilty plea. Counsel testified that she filed numerous motions to suppress, some that were ruled on and some that were not. Counsel testified that upon securing a favorable plea agreement that was contingent upon the remaining motions to suppress being withdrawn and Petitioner's decision to accept the plea agreement, the need for the motions to suppress was eliminated. Resp. Ex. 13, pp. 37, 109, Habeas Transcript (HT) (Doc. 24-2). Further, Counsel testified that the failure to follow through with the motions was a result of a specific strategy to reduce Plaintiff's amount of prison time in light of all the pending charges.

The state habeas court considered the evidence presented at the hearing and determined that Petitioner's counsel had provided effective assistance as required under Strickland v. Washington, 466 U.S. 668 (1984). The state court's decision reflected a reasonable determination of the facts in light of the evidence presented and was consistent with clearly established federal law.

To demonstrate ineffective assistance of counsel, a petitioner must establish: 1) that counsel's performance was deficient, falling "below an objective standard of reasonableness"; and 2) that counsel's deficient performance prejudiced the defense, in that there is a reasonable probability that the outcome would have been different but for counsel's unprofessional errors. Strickland, 466 U.S. at 687-88. In the context of a guilty plea, a petitioner must demonstrate that counsel's advice was outside the range of competence demanded of attorneys in criminal cases. Hill v. Lockhart, 474 U.S. 52, 58 (1985). To meet the second prong, a petitioner must establish "that there is a reasonable possibility that, but for counsel's errors, he would not have pled guilty

and would have insisted on going to trial." Id. at 58-59. If both prongs are not met, relief is unavailable. Because both prongs must be satisfied in order to prevail, courts need not address the prejudice prong if it has not been shown that counsel's performance was deficient. Holladay v. Haley, 209 F.3d 1243, 1248 (2000).

The record supports the state habeas court's determination that counsel's assistance was within the range of competence demanded of attorneys in criminal cases. As the state habeas court noted, the record showed that counsel had met with Petitioner numerous times and had discussed the legal and factual defenses to Petitioner's cases. Because Petitioner was involved in multiple charges with multiple legal and factual issues in each charge, Petitioner's counsel was required to look at the totality of the circumstances involving all of Petitioner's charges when making strategic choices and recommendations to Petitioner. Resp. Ex. 13 pp. 25-28, HT (Doc. 24-2). Specifically, Petitioner's counsel focused on limiting Petitioner's potential incarceration for all of his charges. Petitioner's counsel explained her thinking to Petitioner in an August 28, 2005 letter titled "Plea Offer & Current Case Assessment":

> You will recall that on May 1, 2005, I delivered a letter to you regarding the plea offer made by ADA Bobbitt. As you know, you have been charged with Felony Murder, Armed Robbery, two counts of Aggravated Assault and two counts of Possession of a Firearm During the Commission of a Felony. I also enclosed a copy of each of the relevant statutes covering the crimes that you have been charged with [sic] my previous letter. You will also recall that I told you that ADA Bobbitt made the plea offer to dispose of all of these cases. She offered a plea to the Felony Murder charge carrying a life sentence. If you choose to plead to the Felony Murder charge, then ADA Bobbitt agreed to dismiss all of the other charges; i.e., the two Aggravated Assaults, the Armed Robbery and Possession of Firearm charges. It was, and still is, a remarkable offer in light of our review of ALL the evidence that has been provided by the State.
>
> In my letter dated May 1, 2005, I also laid out for you each of my concerns and observations of your case and our potential for success on each item. At that time, and even currently, one of our tantamount concerns is the possible sentence that you face, should you be found guilty of the crimes charged. Murder, of course carries a life sentence. (See O.C.G.A. § 16-5-1). Aggravated Assault carries a

> sentence of twenty (20) years imprisonment. (See O.C.G.A. § 16-5-21). Armed Robbery also carries a mandatory minimum sentence of ten (10) years to serve with twenty (20) year service max. (See O.C.G.A. § 16-8-41). Possession of a Firearm During the Commission of a Crime carries a five (5) year sentence to be served consecutive to any other sentence; for more than one conviction of this crime, you may be sentenced to up to ten (10) years. Those ten (10) years will run consecutive, and not concurrent to the other sentences. (See O.C.G.A. § 16-11-106). As I told you before, the reason the length of the sentences is so important is that each sentence can run consecutive; meaning that you could be faced with a sentence of life plus twenty (20) years for the Aggravated Assault, plus twenty (20) for the second Aggravated Assault, plus another twenty (20) years for the Armed Robbery, plus an extra ten (10) years for the Possession of the Firearm charges if you were to be convicted of all you have been charged with. If you are convicted by a jury of your peers of all the crimes charged, you will be facing the possibility of being sentenced to serve life, plus seventy (70) years. Additionally, there is no longer a 90% service rule, meaning that you would serve the entire portion of the sentence handed down as to the Aggravated Assault and Armed Robbery charges. The offer that has been presented would allow you to serve fourteen (14) years, which is the length of time that is served for a life sentence; you would then be eligible for parole consideration after fourteen (14) years.
>
> You need to be advised that if we file any motions in this case that require a response, and/or hearing by Ms. Bobbitt, she has indicated that the plea offer will be withdrawn by the State. You will not be allowed to proceed to trial and change your mind halfway through, and decide to accept the offer at that time. I will now address each issue that needs to be addressed at this point in your case preparation.

Resp. Ex. 13 pp. 109-10 (Doc. 24-2). This letter shows that counsel described the potential advantages of the proposed plea agreement in great detail and also explained that accepting the offer would require Petitioner to forego any further motions.

Counsel's letter went on to explain to Petitioner the potential motions that counsel intended to file if Petitioner rejected the offer, including the motion to suppress Plaintiff's statement, and the likelihood of success on each of the motions. With regard to the motion to suppress Petitioner's statement, Petitioner's counsel indicated that she believed the statement was likely to be found to be admissible due in large part to the fact that the police officer's testimony was going to contradict Petitioner's version of the facts surrounding the seizure and

statement. As Petitioner's counsel explained, it was more likely for the "Judge to believe a group of law enforcement officers over a criminal defendant for such factual determinations." Resp. Ex. 13 p. 112 (Doc. 24-2).

Counsel also explained the multiple factual problems surrounding the case, including the fact that Petitioner and his wife were having marital problems. This fact was important because Mrs. Shine, once thought to be a key witness for Petitioner's defense, was not cooperating with Petitioner's counsel and was now potentially a key witness for the State. The letter concluded by emphasizing that it was Petitioner's decision to decide whether to take the plea. After reading Counsel's letter, Petitioner signed the last page indicating that he wished to proceed to trial.

The circumstances changed after Petitioner's co-defendant was found guilty of armed robbery, two counts of aggravated assault, and two counts of possession of a firearm during the commission of a crime.[2] Petitioner's co-defendant went to trial on those charges prior to Petitioner's scheduled trial. Resp. Ex. 13 p. 25, HT (Doc. 24-2). After being found guilty by a jury of all charges, the co-defendant was sentenced to serve sixty years in prison--three sets of twenty-year sentences to be served consecutively. Petitioner's counsel testified that she was very familiar with the judge who sentenced the co-defendant, and that she anticipated that Petitioner would be convicted of the same charges and sentenced to the exact same sentence. Resp. Ex. 13 p. 26, HT (Doc. 24-2). Thus, even if Petitioner's statement was suppressed and he was found not guilty of the murder charges, Petitioner still faced a high probability that he would spend the better part of the next sixty years in prison. After counsel explained this to Petitioner, Petitioner indicated that he wished to accept the State's plea offer by signing counsel's letter on March 4, 2006.

---

[2] Petitioner's co-defendant was not charged with murder or felony murder.

Petitioner's counsel also testified about two other factors that played an important role in her recommendation that Petitioner accept the State's plea offer. Resp. Ex. 13 pp. 27-28, HT (Doc. 24-2). The first factor was that Petitioner would be able to enter his plea in his best interest pursuant to Alford, which allowed Petitioner to obtain the benefits of the plea without actually admitting to murdering Mr. Hill. The second factor was that the district attorney's office agreed that it would not object to Petitioner obtaining parole after fourteen years.[3] Based on these factors, Petitioner's trial counsel believed that Petitioner had an opportunity, unlike his co-defendant, to be released from prison after fourteen years. Resp. Ex. 13 pp. 27-28, HT (Doc. 24-2). Counsel therefore advised Petitioner to accept the plea offer, and Petitioner accepted the offer. In light of the conditions of the plea offer, the Jackson-Denno hearing and a number of motions to suppress were not conducted.

In view of the evidence in the record showing that Petitioner's counsel was thorough in the investigation of Petitioner's case as well as her communications with Petitioner regarding his options, the state habeas court determined that counsel's performance was not deficient under Strickland. Resp. Ex. 9 (Doc. 9-9). Based upon these findings, the court concluded that Petitioner's claims provided no basis for relief. Id.

The majority of Petitioner's arguments in support of his federal petition focus on the prejudice prong of the Strickland analysis. Specifically, Petitioner contends that he was prejudiced by his counsel's performance because if the motions to suppress would have been heard, Petitioner would have prevailed on those motions and insisted on proceeding to trial. Petitioner argues that the state habeas court erred by failing to make factual findings and conclusions of law regarding the circumstances of his arrest and his statement given to the

---

[3] Although the decision to grant parole is the exclusive discretionary decision of the State Board of Pardons and Paroles, the district attorney's office has the right to object to a prisoner's parole. Here, the district attorney's office agreed not to object to Petitioner's parole.

police. Petitioner contends that because the state habeas court failed to address the merits of his motion to suppress, this Court is required to make those factual findings and conclusions of law.

Petitioner's argument, however, is without merit. The state habeas court complied with the applicable federal law, that is, Strickland and its progeny. Under Strickland, *both* the performance prong *and* the prejudice prong must be established by the Petitioner. 466 U.S. at 687-88. Accordingly, if the court finds that the Petitioner fails to establish the performance prong, the court is not required to address the prejudice prong. Holladay, 209 F.3d at 1248. The state habeas court therefore did not err by failing to make findings of fact and conclusions of law regarding the merits of Plaintiff's motion to suppress.

The state habeas court's determination of the facts in light of the evidence was reasonable and consistent with clearly established federal law. Accordingly, the state habeas court's ruling that the claims set forth in Grounds Two and Four of the instant petition provide no basis for relief is entitled to deference and cannot be disturbed by this Court.

### NEED FOR AN EVIDENTIARY HEARING

Because the state habeas court produced a sufficient factual record in this case and Petitioner has failed to meet the requirements for an evidentiary hearing under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. §2244, an evidentiary hearing is not needed. Under AEDPA, if an applicant has failed to develop the factual basis of a claim in state court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that: (A) the claim relies on: (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and

convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense. 28 U.S.C. § 2254(e)(2). After a review of the record in this case, and in light of the determination above that Plaintiff is not entitled to relief, no evidentiary hearing is warranted in this case.

## CONCLUSION

Because Petitioner has failed to demonstrate that any claim adjudicated on the merits in the state court resulted in a decision that was: (1) unreasonable in light of the evidence; or (2) contrary to or the result of an unreasonable application of clearly established federal law as determined by the United States Supreme Court, **IT IS RECOMMENDED** that his petition be **DENIED**.

In addition, and pursuant to the requirements of Section 2254 Rule 11(b), it does not appear that Petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted). Accordingly, **IT IS FURTHER RECOMMENDED** that the Court deny a certificate of appealability in its final order.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this recommendation with the district judge to whom this case is assigned, within fourteen (14) days after being served with a copy thereof.

**SO RECOMMENDED**, this 19th day of March, 2012.

s/ Charles H. Weigle_____<br>
Charles H. Weigle<br>
United States Magistrate Judge